IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-107

No. 39A21

Filed 24 September 2021

IN THE MATTER OF: J.D.D.J.C., J.D.R.D.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 9 October 2020 by Judge Micah J. Sanderson in District Court, Cleveland County. This matter was calendared in the Supreme Court on 19 August 2021, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Charles E. Wilson, Jr., for petitioner-appellee Cleveland County Department of Social Services.*
>
> *Stacy S. Little for appellee Guardian ad Litem.*
>
> *J. Thomas Diepenbrock for respondent-appellant mother.*

PER CURIAM.

¶ 1   Respondent-mother Sherry C. appeals from an order entered by the trial court terminating her parental rights in her minor children, J.D.D.J.C. and J.D.R.D.C.[1] Counsel for respondent-mother has filed a no-merit brief on respondent-mother's

---

[1] J.D.D.J.C. and J.D.R.D.C. will be referred to through the remainder of this opinion as Joshua and Jolene, respectively, which are pseudonyms used for ease of reading and to protect the juveniles' privacy.

behalf as authorized by N.C.R. App. P. 3.1(e). After careful consideration of the record in light of the applicable law, we affirm the trial court's termination order.

On 13 October 2011, the Cleveland County Department of Social Services filed a petition alleging that three-month-old Joshua, two-year-old Jolene, and their older half-siblings, eleven-year-old Sally and sixteen-year-old Henry, were neglected juveniles[2] and obtained the entry of an order placing Jolene, Sally, and Henry in nonsecure custody.[3] On 13 July 2012, Judge Meredith A. Shuford entered an order finding that Joshua and Jolene were neglected juveniles "in that they live in an environment injurious to their welfare and do not receive proper care or supervision and have not been provided necessary medical care, based upon [respondent-mother's] untreated mental illness and failure to comply with recommended treatment for [Henry]."

In support of this determination, Judge Shuford found that DSS had received reports concerning respondent-mother's untreated mental illness and had offered to provide respondent-mother with assistance as far back as 1999 and that Sally and Henry had been placed in DSS custody in 2001. In addition, Judge Shuford found

---

[2] Sally and Henry are also pseudonyms used for ease of reading and to protect the identity of the juveniles and their siblings.

[3] DSS refrained from seeking to obtain nonsecure custody of Joshua at that time given that he was residing with his father. As a result of the fact paternity testing showed that Joshua and Jolene had the same father, Judge Larry J. Wilson subsequently sanctioned Jolene's placement in the father's home with Joshua.

that, while the family was receiving "Intensive In-Home Family Preservation" services, DSS had received child protective services reports in August and September 2011 that indicated that respondent-mother had physically abused the children, that the children were begging the neighbors for food, and that Sally was having to care for her siblings and further found that Henry had disclosed that he had thought of killing himself or respondent-mother at a Child and Family Team meeting held on 28 September 2011.

¶ 4        Judge Shuford also found that respondent-mother had refused to comply with recommendations that Henry receive a psychological evaluation and enter a therapeutic foster placement and the recommendation that she should seek mental health treatment for herself. According to Judge Shuford, two days after the 28 September 2011 meeting, DSS had been called to respondent-mother's home, at which law enforcement officers and emergency medical service personnel were attempting to take Henry to the hospital because of his continued suicidal ideation and homicidal threats. Judge Shuford determined that respondent-mother had initially refused to sign a release authorizing Henry's hospitalization before changing her mind. Although Henry was involuntarily committed for mental health treatment, Judge Shuford found that, following Henry's discharge, respondent-mother refused to allow Henry to be placed in a leveled mental health or therapeutic placement, an action that prompted DSS to seek relief through the judicial system.

¶ 5        In addition, Judge Shuford found that respondent-mother had submitted to a psychological evaluation in January 2012 and had been diagnosed as suffering from mood disorder, post-traumatic stress disorder, borderline personality disorder, and paranoid personality disorder; that respondent-mother had consistently failed or refused to comply with recommended and necessary mental health treatment for the past decade; and that the children had experienced negative effects as the result of respondent-mother's mental health condition and her failures to obtain treatment. Finally, Judge Shuford found that respondent-mother had consistently refused to attend Child Family Team meetings with DSS since October 2011.

¶ 6        After having determined that the children were neglected juveniles, Judge Shuford awarded custody of Joshua and Jolene to the father Tracy H., while authorizing respondent-mother to have one hour of supervised visitation with the children each week. Judge Shuford retained jurisdiction over Joshua and Jolene for the purpose of supervising visitation-related issues and ordered respondent-mother to comply with recommended mental health treatment, including participation in individual counseling and medication management, and to sign releases authorizing the release of treatment-related information to DSS. After a review hearing held on 7 November 2012, Judge Anna F. Foster entered an order on 19 November 2012 waiving the necessity for further review hearings relating to Joshua and Jolene.

¶ 7 On 23 October 2013, DSS obtained the entry of orders placing Joshua and Jolene in nonsecure custody and filed a petition alleging that Joshua and Jolene had been abused and neglected while in the custody of their father. On 11 April 2014, Judge Shuford entered an order finding that Joshua and Jolene were abused and neglected juveniles based upon findings that the children had been exposed to a substantial risk of injury when the father had left them at night without proper supervision in a padlocked room in which various pills and a knife were present; that the father's home was in substandard condition; and that, even though respondent-mother did not have custody of the children, Joshua and Jolene had previously been adjudicated neglected and respondent-mother had failed to sufficiently comply with court-ordered treatment so as to preclude their return to her custody. As a result, Judge Shuford ordered that the children remain in DSS custody and awarded the parents a minimum of one hour of supervised visitation each week. In addition, Judge Shuford ordered the parents to take appropriate measures to facilitate the children's return to parental custody, with respondent-mother having been ordered to comply with all recommendations for mental health and psychiatric treatment and to sign releases authorizing DSS to obtain access to information relating to the progress that she had made in the course of her treatment; to obtain a parental fitness evaluation and comply with any resulting treatment recommendations; and to

establish and maintain clean, safe, and stable housing and sufficient income for herself and the children.

¶ 8 In an order entered on 15 October 2014 after a review and permanency planning hearing held on 1 October 2014, Judge Jeannette R. Reeves found that respondent-mother had failed to consistently attend mental health treatment; that, even though she had obtained a parental fitness evaluation and completed parenting classes, she had failed to demonstrate that she had made any progress toward improving her parenting skills and had made statements to the effect that she did not intend to change the manner in which she parented her children. In addition, Judge Reeves found that respondent-mother continued to live in a home that was "essentially uninhabitable" and that she had recently given birth to her seventh child, who had been taken into nonsecure custody by DSS. Based upon these findings, Judge Reeves determined that continued efforts to reunify the children with respondent-mother would be futile and relieved DSS of the necessity for attempting to facilitate such a result. On the other hand, however, Judge Reeves ordered that DSS continue to attempt to reunify the children with the father, who had made significant progress toward addressing the conditions that had led to the children's removal from his home, and established a primary permanent plan for the children of reunification with the father while continuing to sanction weekly visits between respondent-mother and the children.

¶ 9 After a review and permanency planning hearing held on 20 January 2016, Judge Ali Paksoy entered an order returning custody of the children to the father. Although respondent-mother requested that she be allowed unsupervised visitation with the children on the grounds that she had made improvements to her home and had complied with the requirements that had previously been imposed upon her, Judge Paksoy determined that respondent-mother had failed to produce any evidence to support her claims, continued to authorize weekly supervised visitation between respondent-mother and the children, and waived the necessity for further review hearings involving Joshua and Jolene.

¶ 10 On 27 June 2018, DSS filed yet another juvenile petition alleging that Joshua and Jolene were abused and neglected juveniles. In this petition, DSS alleged that it had received a request for assistance from the Cleveland County Sheriff's Office on 26 June 2018 predicated upon the fact that the father had been arrested on the basis of Jolene's claims that the father had sexually abused her and the fact that the father's girlfriend had admitted that she had enabled the father's abuse of Jolene and that she had used methamphetamine with the father. In view of the fact that the children had no appropriate alternative caregivers, DSS obtained nonsecure custody of both children.

¶ 11 After a hearing held on 23 January 2019, the trial court entered an order on 6 February 2019 finding that Joshua was a neglected juvenile and that Jolene was an

abused and neglected juvenile. In light of those determinations, the trial court authorized the cessation of efforts to reunify the children with the father while ordering DSS to attempt to reunify Joshua and Jolene with respondent-mother, with this requirement resting upon findings that respondent-mother was employed as a long-distance truck driver, that respondent-mother had admitted that she lacked safe and stable housing for herself and the children, and that respondent-mother had continued to deny that she needed to participate in mental health treatment. After authorizing weekly supervised visitation between respondent-mother and the children, the trial court ordered respondent-mother to obtain a psychological and parental fitness evaluation, to comply with any treatment-related recommendations, and to sign releases authorizing the disclosure of information relating to her evaluation and treatment to DSS; to obtain a substance abuse assessment, comply with any treatment-related recommendations, and submit to random drug testing; and to establish and maintain clean, safe, and stable housing and demonstrate the ability to properly care for the children.

¶ 12      After a review and permanency planning hearing held on 13 February 2019, Judge Shuford entered an order on 19 February 2019 in which she found that, while respondent-mother had visited with the children, her contacts with them had occurred on an inconsistent basis because of the demands of her employment as a truck driver; that respondent-mother had failed to comply with the trial court's prior

dispositional order given the fact that she had not maintained safe and stable housing; that she continued to deny the need for the assessments and treatments in which she had been ordered to participate, and that she lacked a reliable plan of care for the children during times when she was scheduled to be out of town driving a truck given that her adult son, with whom she planned to leave the children, had a prior criminal record and child protective services history, was involved in an open child protective services matter, and had mental health problems of his own. After ordering that the children remain in DSS custody, Judge Shuford established a primary permanent plan for the children of reunification with respondent-mother along with a concurrent secondary plan of adoption.

¶ 13     Review and permanency planning hearings relating to Joshua and Jolene were held on 15 May 2019, 6 November 2019, and 6 May 2020. In orders entered by Judge Shuford on 3 June 2019, Judge K. Dean Black on 19 November 2019, and the trial court on 8 June 2020 in the aftermath of these proceedings, these three judges repeatedly found that respondent-mother had failed to visit with the children consistently; that respondent-mother had refused to meet with DSS for the purpose of developing a case or a visitation plan; that respondent-mother had been uncooperative and argumentative with DSS during the course of its attempts to schedule visitation sessions between respondent-mother and the children and to arrange for various services for respondent-mother; that, even though she had

completed a comprehensive clinical assessment, respondent-mother had failed to comply with the resulting treatment recommendations on the basis of her continued insistence that she did not need the recommended psychiatric evaluation, medication management services, or mental health treatment; and that respondent-mother had failed to establish or maintain safe and stable housing and had not cooperated with the efforts that DSS had made to schedule a home visit.

¶ 14 In the 3 June 2019 order, Judge Shuford changed the permanent plan for the children to a primary plan of adoption with a concurrent secondary plan of reunification with respondent-mother. In the 19 November 2019 order, however, Judge Black changed Jolene's permanent plan to one of reunification with respondent-mother and a secondary plan of adoption in light of Jolene's need for a therapeutic placement. In the 8 June 2020 order, the trial court changed Jolene's permanent plan back to a primary plan of adoption after a potential permanent placement with a foster parent who was pursuing therapeutic foster home licensure had been identified.

¶ 15 On 18 February 2020, DSS filed petitions seeking to have respondent-mother's parental rights in Joshua and Jolene terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); willful failure to make reasonable progress toward correcting the conditions that had resulted in the children's removal from the family home, N.C.G.S. § 7B-1111(a)(2); dependency, N.C.G.S. § 7B-1111(a)(6); and the fact that respondent-

mother's parental rights in another child had been involuntarily terminated and respondent-mother lacked the ability or willingness to establish a safe home, N.C.G.S. § 7B-1111(a)(9). After electing to hear and decide the case involving respondent-mother separately from a similar termination of parental rights proceeding directed towards the father,[4] the trial court held a hearing for the purpose of considering the merits of the termination petition on 2 and 9 September 2020. On 9 October 2020, the trial court entered an order determining that respondent-mother's parental rights in the children were subject to termination on the basis of all four grounds for termination set forth in the termination petition, that the termination of respondent-mother's parental rights would be in the children's best interests, and that respondent-mother's parental rights in Joshua and Jolene should be terminated. Respondent-mother noted an appeal to this Court from the trial court's termination order.

---

[4] At the same time that it sought to have respondent-mother's parental rights in the children terminated, DSS filed a petition seeking to have the father's parental rights in Joshua and Jolene terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); failure to make reasonable progress toward correcting the conditions that had led to the children's removal from the family home, N.C.G.S. § 7B-1111(a)(2); and dependency, N.C.G.S § 7B-1111(a)(6). On 28 September 2020, the trial court entered an order finding that respondent-father's parental rights in the children were subject to termination on the basis of all three of the grounds for termination alleged in the termination petition and that the termination of respondent-father's parental rights in Joshua and Jolene would be in the children's best interests. In view of the fact that the father did not note an appeal to this Court from the trial court's termination order, we will refrain from making any further comment about the father's situation in this opinion.

As we have already pointed out, respondent-mother's appellate counsel has filed a no-merit brief on her behalf pursuant to N.C. R. App. P. Rule 3.1(e). In this no-merit brief, appellate counsel identified certain issues relating to the adjudication and disposition portions of the termination proceeding that could arguably support an appeal, including whether the trial court had properly determined that respondent-mother's parental rights were subject to termination and whether the trial court had abused its discretion by determining that the termination of respondent-mother's parental rights would be in the children's best interests before explaining why he believed that the issues that he had contemplated raising on respondent-mother's behalf either lacked merit or would not justify a decision on the part of this Court to overturn the trial court's termination order.[5] In addition, respondent-mother's appellate counsel advised respondent-mother of her right to file pro se written arguments on her own behalf and provided her with the documents necessary to do so. Respondent-mother has not, however, submitted any written arguments for our consideration.

---

[5] According to respondent-mother's appellate counsel, a meritorious argument can be made with respect to the lawfulness of the trial court's determination that respondent-mother's parental rights in the children were subject to termination on the basis of dependency, N.C.G.S. § 7B-1111(a)(6). On the other hand, however, respondent-mother's appellate counsel acknowledges that a decision in respondent-mother's favor with respect to this issue would not result in the invalidation of the trial court's termination order given that the trial court need only find the existence of a single ground for termination in order to support the termination of that parent's parental rights. See *In re J.S.*, 377 N.C. 73, 2021-NCSC-28, ¶ 24.

¶ 17 This Court independently reviews issues identified by appellate counsel in a no-merit brief filed pursuant to N.C.R. App. P. 3.1(e) for the purpose of determining whether they have potential merit. *In re L.E.M.*, 372 N.C. 396, 402 (2019). After careful review of the issues identified in the no-merit brief filed by respondent-mother's appellate counsel in light of the record and the applicable law, we are satisfied that the findings of fact set out in the 9 October 2020 termination order relating to the prior determinations that Joshua and Jolene were neglected juveniles, respondent-mother's failure to participate in court-ordered mental health treatment, respondent-mother's failure to maintain safe and appropriate housing, and the fact that respondent-mother's parental rights in another child had been involuntarily terminated all had sufficient record support. In addition, we are satisfied that the trial court's findings of fact support its determination that respondent-mother's parental rights in Joshua and Jolene were subject to termination on the basis of at least one of the grounds delineated in N.C.G.S. § 7B-1111(a). Finally, we are satisfied that the trial court's findings of fact address the dispositional issues delineated in N.C.G.S. § 7B-1111(a), that these dispositional findings have ample record support, and that these dispositional findings provide a rational basis for the trial court's determination that the termination of respondent-mother's parental rights in Joshua and Jolene would be in the children's best interests. As a result, we affirm the trial court's termination order.

AFFIRMED.